Jason MEIER, by his guardian, Barbara Meier, Plaintiffs-Appellants,

v.

CHAMP'S SPORT BAR & GRILL, INC., Nedzmi Semovski, and Shpend Jonuzi, Defendants-Respondents,

MID-CENTURY INSURANCE COMPANY, Defendant,

Adam AUGUSTINE, Defendant-Co-Appellant.

Supreme Court

*No. 00–0589. Oral argument November 6, 2000.—Decided March 13, 2001.*

2001 WI 20

(Also reported in 623 N.W.2d 94.)

607

For the plaintiffs-appellants and defendant-co-appellant there were briefs (in the court of appeals) by *Bruce D. Huibregtse, Barbara A. Neider, Laura Skilton Verhoff* and *Stafford Rosenbaum LLP*, Madison, and oral argument by *Barbara A. Neider*.

For the defendants-respondents there was a brief (in the court of appeals) by *Bruce M. Davey, Robert M. Whitney* and *Lawton & Cates, S.C.,* Madison, and oral argument by *Robert M. Whitney*.

¶ 1. ANN WALSH BRADLEY, J. This case comes before us on a petition to bypass the court of

appeals pursuant to Wis. Stat. (Rule) § 809.60 (1997–98). The plaintiff, Jason Meier (Meier), by his guardian, his mother Barbara Meier, appeals an order of the circuit court for Dane County, Judge Mark A. Frankel presiding, granting summary judgment to the defendants, Champ's Sports Bar and Grill, Inc. (Champ's), Nedzmi Semovski (Semovski), and Shpend Jonuzi (Jonuzi). He also appeals the circuit court's order granting Semovski's motion for an extension of time in which to file an answer and denying Meier's motion to strike Semovski's answer and motion for default judgment.[1]

¶ 2. On summary judgment, the circuit court determined that the defendants, vendors of alcohol, were entitled to immunity under Wis. Stat. § 125.035(2) (1993–94).[2] It further concluded that Meier was not entitled to an exception to that immunity because he was a provider of alcohol. Meier, however, asserts that he is an injured third party and may proceed under an exception to the defendants' general immunity. We conclude that an individual who provides alcohol to an underage person that is a substantial factor in causing an accident is not a third party under Wis. Stat. § 125.035(4)(b) and therefore cannot take advantage of the exception to the immunity bestowed upon providers of alcohol. We also reject Meier's argument that the circuit court erroneously exercised its discretion in granting defendant Semov-

---

[1] Meier also appeals an amended final judgment entered in the Dane County Circuit Court, David T. Flanagan, Judge, dismissing the complaint upon Judge Frankel's grant of summary judgment. Judge Flanagan assumed the case after Judge Frankel's resignation from the bench.

[2] All subsequent statutory references to the Wisconsin Statutes are to the 1993–94 volumes unless otherwise indicated.

ski an extension of time to file his answer, and in denying Meier's motion to strike and motion for default judgment. Accordingly, we affirm the orders of the circuit court.[3]

¶ 3. The historical facts necessary to resolve the issues presented in this case are substantially undisputed. On the evening of November 25, 1994, Meier, Bryan Johnson (Johnson), and Adam Augustine (Augustine) patronized Champ's, a Sun Prairie restaurant and bar, for the purpose of eating dinner. Meier and Augustine were both 19 years old, and Johnson was 21 years of age.

¶ 4. Upon seating themselves in the bar area of Champ's, a server approached the young men to take their orders. Johnson proceeded to order a beer, and the two 19-year-olds did the same. The server brought the first of many pitchers of beer to be consumed that night. No personnel at Champ's asked Meier, Johnson, or Augustine for identification to verify that they were of legal drinking age, and no member of the group represented that he was of legal drinking age.

¶ 5. The young men spent the evening drinking and playing darts at Champ's. While the deposed testimony of Johnson and Augustine differs to some degree, it is undisputed that the group drank at least five pitchers of beer. The total number could have been as many as ten pitchers. The bartender on duty that night

---

[3] Meier also seeks review of the circuit court's denial of his motion for summary judgment on his claim to pierce the corporate veil and hold Semovski and Jonuzi liable in lieu of Champ's. Because we affirm the circuit court's order granting the respondents' motion for summary judgment, which dismissed all claims against Champ's, Semovski, and Jonuzi on the grounds that they are immune under Wis. Stat. § 125.035(2), we need not reach the piercing the corporate veil argument.

testified that the group possibly consumed eight or nine pitchers of beer. At some point after having lost all interest in eating dinner, the group switched from beer to mixed drinks, purchasing several rounds of Jack Daniel's and Coca-Cola.

¶ 6. To obtain their drinks, the three alternated making trips to the bar to pick up new rounds. To pay for their drinks, Meier and Augustine alternated purchasing rounds. Johnson testified that he did not have any money that night and that all the alcohol was purchased by Meier and Augustine. Augustine testified it was possible that Johnson purchased some alcohol.

¶ 7. There is no question that at the close of the evening, all three men were intoxicated. In that intoxicated state, they left Champ's in order to obtain some food at a truck stop that they frequented. It was agreed that Augustine, who described himself as "very drunk," would drive and the three entered his automobile. Meier rode in the backseat as a passenger. About halfway to the truck stop, the group called off their trip and decided to drive Meier home to his brother's house in Madison.

¶ 8. At about 1:05 a.m. on November 26, Augustine lost control of the vehicle and the car went careening into an embankment. As a result of the collision, Meier was thrown from the vehicle. Augustine, who had to exit the vehicle through the sunroof, found Meier laying unconscious some twenty feet in front of the vehicle. Meier suffered a skull fracture and a severe traumatic brain injury. The injuries left him permanently disabled. Augustine testified that he attributes the cause of the accident to his intoxication, and the parties do not dispute that the accident was the result of Augustine's intoxication.

¶ 9. In 1995, Meier brought this action against Champ's, Semovski, Jonuzi, Augustine and their insurers. Champ's is a closely held corporation, of which Semovski and Jonuzi are the sole shareholders. Both Semovski and Jonuzi were also present at Champ's on the evening of November 25, 1994. Meier alleged that Champ's, Semovski, and Jonuzi committed negligence in serving alcohol to Augustine and that the provision of alcohol was a substantial factor in causing Meier's injuries.[4]

¶ 10. In beginning the action, Meier obtained substituted service of process on Semovski when he served the summons and complaint on Semovski's wife at home on April 27, 1995. The registered agent for Champ's was served with an identical summons and complaint at the restaurant on April 30. Semovski took only the latter summons and complaint served on Champ's to his attorney, and did not mention the other. Semovski's attorney then referred Semovski to another law firm, where he forwarded the summons and complaint served on Champ's. On Monday, May 22, Semovski and Champ's filed their joint answer.

¶ 11. Because of the three-day difference between the dates of service, Semovski's answer had been due on May 17. Accordingly, Meier moved to strike the answer and moved for default judgment. In response, Semovski moved to enlarge the time in which to file an answer or for relief from the effects of a late answer. The circuit court concluded that there was excusable neglect and accepted Semovski's untimely

---

[4] Meier also alleged a cause of action against Augustine and his insurer for negligence in the operation of the motor vehicle. This cause of action is not involved in this appeal.

We note that Augustine is a party to this appeal as a co-appellant and has joined in Meier's brief and reply brief.

answer after granting his motion for an extension of time and denying Meier's motion to strike and motion for default judgment.

¶ 12. After several years of discovery and pretrial activity, the defendants moved for summary judgment, arguing that they were entitled to immunity under Wis. Stat. § 125.035(2) because Meier was not an injured third party under the § 125.035(4)(b) exception to that immunity.[5] Subsection (4)(b) excepts providers of alcohol from immunity where they provide alcohol to an underage person "if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages. . .were a substantial factor in causing injury to a 3rd party." The defendants argued that Meier was not a third party under this provision because he was a party to the sale and procurement of the alcohol that he claimed was a substantial factor in causing his injuries.

¶ 13. In an extensive written decision the circuit court agreed that the defendants were entitled to immunity and granted the defendants summary judg-

---

[5] Wisconsin Stat. § 125.035 states in pertinent part:

125.035 Civil liability exemption: furnishing alcohol beverages.

. . . .

(2) A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person.

. . . .

(4)(a) In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(1)(a).

(b) Subsection (2) does not apply if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a 3rd party. . . .

ment on all claims against them. The court concluded that Meier did not qualify under a common and approved definition of the term "third party."[6] The court explained:

> Because one who procures alcohol for an underage drinker is a party to the transaction that leads to the underage drinker's intoxication, they cannot qualify as a "third party" under this definition. It is difficult to imagine a class of individuals that the legislature would have more likely intended to exclude from qualifying as a "third party" than those persons involved in procuring alcohol for the underage drinker who ultimately injures another party.

¶ 14. In response, Meier unsuccessfully sought reconsideration of the circuit court's order granting summary judgment. He subsequently appealed. The parties jointly requested to bypass the court of appeals.

I

¶ 15. We first address the circuit court order granting summary judgment in favor of the defendants. In reviewing a decision to grant summary judgment we employ the same methodology used by the circuit court. *Stelpflug v. Town of Waukesha*, 2000 WI 81, ¶ 17, 236 Wis. 2d 275, 612 N.W.2d 700. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat.

---

[6] The circuit court consulted *Black's Law Dictionary*, which defined a third party as "one not a party to an agreement, a transaction, or an action but who may have rights therein." *Deluxe Black's Law Dictionary* 1479 (6th ed. 1990).

§ 802.08(2) (1999–2000). The resolution of this case implicates the construction of Wis. Stat. § 125.035(4)(b) within this summary judgment context. Such a question of statutory interpretation is a question of law that we review independently of the determination of the circuit court. *Czapinski v. St. Francis Hosp., Inc.*, 2000 WI 80, ¶ 12, 236 Wis. 2d 316, 613 N.W.2d 120.

¶ 16. Our summary judgment determination essentially will depend on whether the defendants are entitled to the immunity bestowed upon providers of alcohol under Wis. Stat. § 125.035(2) or whether the § 125.035(4)(b) exception to that immunity applies. Given the general rule of immunity under § 125.035(2) for providers of alcohol, Meier's claims against the defendants are predicated on the § 125.035(4)(b) exception. The applicability of the exception to immunity hinges upon our construction of that provision, and in particular the term "3rd party" as juxtaposed against "provider." In this case, we specifically must determine whether "3rd party" may be construed to include one who provides alcohol to an underage drinker that is a substantial factor in causing an accident. If a provider of alcohol can also be a third party then Meier can take advantage of the exception to immunity provided by the statute in an action against a vendor of alcohol.

¶ 17. While this is a question of first impression, in *Miller v. Thomack*, 210 Wis. 2d 650, 660 n.11, 563 N.W.2d 891 (1997), we specifically acknowledged that this issue might arise under § 125.035(4)(b). However, we declined to address the issue in that case. *Id.* In deciding the issue today, we conclude that an individual who provides alcohol to an underage person that is

a substantial factor in causing an accident cannot be considered a third party under § 125.035(4)(b).

¶ 18. We begin our analysis with the undisputed premise that Meier is a provider as the term is used in § 125.035(4)(b). While "3rd party" is not defined by the statute, "provider" is defined as one "who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(1)(a)." Wis. Stat. § 125.035(4)(a). In *Miller v. Thomack*, we concluded that a person "who contributes money with the intent of bringing about the purchase of alcohol beverages for consumption by an underage person whom the person knows, or should know, is under the legal drinking age, procures alcohol beverages for the underage person within the meaning of Wis. Stat. §§ 125.07(1)(a)1 and 125.035(4)." 210 Wis. 2d at 656–57. Because he contributed money for the purchase of alcohol, Meier procured alcohol under *Miller* and thus qualifies as a provider within the meaning of § 125.035(4)(a).[7]

¶ 19. We also note that our analysis is premised on the fact that the alcohol provided by Meier was a substantial factor in causing the accident and his resulting injuries. The issue as framed by the parties has been whether Meier's provider status barred him from being a third party under § 125.035(4)(b) without consideration of whether the alcohol he provided was a substantial factor in causing his injuries.[8] However,

---

[7] The summary judgment materials also suggest that Meier made actual physical trips to the bar to obtain rounds of alcohol. By this act of procurement Meier is also a provider within the meaning of § 125.035(1)(a).

[8] In his brief, Meier stated without supporting argument that the circuit court erroneously assumed that Meier provided alcohol that was a substantial factor in causing the accident.

given the degree of intoxication described in the summary judgment materials and the fact that Meier provided somewhere in the realm of one-third to one-half of the alcohol, we do not find there to be a disputed issue of material fact as to whether Meier's provision of alcohol was a cause of the accident.

¶ 20. While Meier acknowledges that he and the defendants are providers, he argues that his provider status is relevant only in determining whether he would be subject to liability vis-à-vis a third party and not in determining whether the exception to immunity applies in an action against another provider. Meier argues that from the perspective of the provision of alcohol by the defendants to Augustine, the defendants are the first party, Augustine is the second party, and Meier is an injured third party. He contends that this reading of the statute comports with the common understanding of "third party."

¶ 21. In *Miller* we noted that "[t]he scope of the term third party is not apparent in the statute." *Id.* at 660 n.11. Consistent with that statement, we conclude that as a result of the interplay of the terms "provider" and "3rd party" reasonable minds can differ as to the meaning of the statute. To resolve the ambiguity we determine the legislative intent behind the statute through an inquiry into the ordinary usage of the language, legislative policy, and legislative history.

██
¶ 22. Meier apparently understands the term "third party" to literally describe the numeric relationship among the actors described by the statute.

However, Meier's position at oral argument was that the issue of whether the alcohol that Meier provided was a substantial factor is relevant only in considering whether Meier himself is immune.

617

However, we do not believe that such an interpretation in this context is consistent with the common understanding of the term. When construing a statute we must give effect to the ordinary and accepted meaning of language. Wis. Stat. § 990.01(1) (1999–2000); *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 140, 561 N.W.2d 729 (1997).

¶ 23. "Third party" ordinarily describes one who is not a principal to a transaction. *The American Heritage Dictionary of the English Language* 1865 (1992) ("One other than the principals involved in a transaction."); *Black's Law Dictionary* 1489 (7th ed. 1999) ("someone other than the principal parties").[9] The term bears no relation to the actual number of individuals involved in a transaction. There may be any number of principals to a transaction and any number of third parties. While the scope of the term "third party" is drawn into question in this statutory context, we are confident that term standing alone is intended by the legislature to have its ordinary meaning.

¶ 24. Abiding by the common understanding of "third party" we next examine that term as it is used in the statute. The transactional focus of § 125.035(4)(b) is the provision of alcohol to underage persons.[10] The principal parties to such a transaction are: (1) providers and (2) underage drinkers. When the transaction

---

[9] *See also* Wis. Stat. § 401.201(29) (1999–2000) (" 'Party' as distinct from '3rd party', means a person who has engaged in a transaction or made an agreement within chs. 401 to 411.").

[10] At oral argument Meier suggested that it was possible that the transaction referenced by the term "third party" was the injury-causing accident. We disagree. The statute's focus is on the furnishing of alcohol beverages and not on the resulting accident or incident which may cause injury.

618

between these principals is a substantial factor in causing harm to a third party the statutory immunity is lifted and a third party may proceed against a provider. Thus, application of this common definition of third party to § 125.035(4)(b) leads to the conclusion that a third party is someone other than the underage drinker or a provider who provides alcohol that is a substantial factor in causing the third party's injuries.

¶ 25. Accordingly, because Meier provided alcohol that was a substantial factor in causing the accident and his injuries, he cannot be considered a third party under the statute. An individual may not provide injury-causing alcohol and also claim to be a third party in order to take advantage of the exception to immunity in an action against another provider.

¶ 26. We find further support for our conclusion that Meier is not a third party under § 125.035(4)(b) in the legislative policy underlying that provision. In *Doering v. WEA Insurance Group*, 193 Wis. 2d 118, 532 N.W.2d 432 (1995), we explained that the legislative policy precludes injured underage drinkers from bringing a cause of action against the provider of alcohol. We described how § 125.035(4)(b) protects underage persons by deterring those who would provide them with alcohol:

> The fact that sec. 125.035 does not allow underage drinkers who themselves are injured to bring a cause of action against the person who provided the alcohol beverages does not defeat the conjectured legislative purpose of protecting underage persons. Facilitating compensation for injured underage drinkers is not the only means of attempting to protect people under the legal drinking age. The legislature may have determined that sheltering people under the legal drinking age by deterring

619

those who might otherwise furnish alcohol beverages to them, rather than compensating the injured underage person, would better serve the goal of protecting young people.

*Id.* at 142–43 (footnote omitted).

¶ 27. Under § 125.035(4)(b), providers of alcohol are deterred from providing alcohol to minors by the liability that may arise when the provision of alcohol results in an injury to a third party. Even though the underage drinker who causes injury to a third party may be among the group that the legislature seeks to protect, the exception to immunity applies only in an action brought by the injured third party. *Kwiatkowski v. Capitol Indem. Corp.*, 157 Wis. 2d 768, 776, 461 N.W.2d 150 (Ct. App. 1990). Under the statute, providers are the object of the statutory deterrence; they are the group whose conduct is sought to be prevented. As the circuit court explained, "[i]t is difficult to imagine a class of individuals that the legislature would have more likely intended to exclude from qualifying as a 'third party' than those persons involved in procuring alcohol for the underage drinker who ultimately injures another party."

¶ 28. To allow Meier to be both a provider and a third party would be to ignore that Meier, as a provider, is the object of the legislative goal of deterrence. Meier emphasizes the wrongful and illegal nature of the defendants' conduct in selling alcohol to a minor in contravention of Wis. Stat. § 125.07. While there may be some moral distinction to be drawn between Meier's and the defendants' conduct, the controlling statutes do not draw such a distinction. Under § 125.035(4)(a), Meier's conduct in procuring alcohol for Augustine is the equivalent of the defendants' sale of alcohol to Augustine. Both have similarly committed a violation

of § 125.07(1)(a) through their provision of alcohol to Augustine.[11] Because the legislative goal of the statute is to deter the very conduct in which Meier engaged and that conduct was a substantial factor in bringing about his injuries, we conclude that he cannot take advantage of the exception to immunity in an action against another provider.

¶ 29. Meier has also emphasized that he was an underage drinker who lacked the judgment of a 21-year-old and thus should be allowed to proceed against adult providers. While we are sympathetic to Meier's situation, his argument seeks to interject an additional consideration of age into § 125.035(4)(b). Under § 125.035(4)(b), it is only Augustine's age that is relevant. Augustine is the underage drinker to whom alcohol was provided by the defendants and Meier. The statute draws no other distinction between minors and adults, whether providers or third parties. To consider Meier's age in the statutory equation would require us to draw a line between a third party and a provider at

---

[11] Section 125.035(4)(a) incorporates § 125.07(1)(a) into the definition of provider. Section 125.07(1)(a) states:

(1) ALCOHOL BEVERAGES; RESTRICTIONS RELATING TO UNDERAGE PERSONS. (a) Restrictions. 1. No person may procure for, sell, dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

2. No licensee or permittee may sell, vend, deal or traffic in alcohol beverages to or with any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

3. No adult may knowingly permit or fail to take action to prevent the illegal consumption of alcohol beverages by an underage person on premises owned by the adult or under the adult's control. This subdivision does not apply to alcohol beverages used exclusively as part of a religious service.

4. No adult may intentionally encourage or contribute to a violation of sub. (4) (a) or (b).

621

the age of 21. It is beyond our powers to draw such a line.

¶ 30. Having concluded that the common meaning of the term "third party" as used in the statute and the legislative policy dictate that Meier is not a third party, we next examine the legislative history. Meier urges us to employ the canon of construction that statutes in derogation of the common law must be strictly construed.[12] Meier posits that at the time of § 125.035's creation the common law provided no immunity to a party that provides intoxicants to an underage person, and that strict construction of the statute requires liability where immunity is not clearly and unambiguously established. We conclude that this canon of strict construction is inapplicable to § 125.035(4)(b). Meier's argument is based on an imprecise view of the pre-§ 125.035 rule of common law immunity.

¶ 31. For decades Wisconsin common law recognized no liability on the part of sellers of alcohol for damages arising from the acts of an intoxicated person. *See, e.g., Farmer's Mut. Auto. Cas. Co. v. Gast,* 17 Wis. 2d 344, 117 N.W.2d 347 (1962); *Seibel v. Leach,* 233 Wis. 66, 228 N.W. 774 (1939). This common law immunity underwent a continuing series of salvos,[13] withstanding attack until this court's decision in *Sor-*

---

[12] As a general matter, this canon of strict construction provides that where there exists a common law doctrine relevant to the issue presented and a statute would change the common law, the legislative intent to change the common law must be clearly expressed. *LePoidevin v. Wilson,* 111 Wis. 2d 116, 129–30, 330 N.W.2d 555 (1983).

[13] The rule of common law immunity withstood challenges in *Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979); *Garcia v. Hargrove,* 46 Wis. 2d 724, 176 N.W.2d 566 (1970); and

*ensen v. Jarvis,* 119 Wis. 2d 627, 350 N.W.2d 108 (1984).

¶ 32. In *Sorensen,* the court was faced with the question of "whether a third party injured by an intoxicated minor has a common law negligence action against a retail seller for the negligent sale of an intoxicating beverage to a person the seller knew or should have known was a minor and whose consumption of the alcohol was a cause of the accident." *Id.* at 629. The court concluded that in such a situation a third party does have a cause of action in negligence and abrogated the rule of common law immunity in the situation faced by the court.[14] *Sorensen,* 119 Wis. 2d at 646. The following term, *Koback v. Crook* extended the liability established in *Sorensen* to allow for a cause of action against social hosts who served alcohol to a minor where the minor's consumption of alcohol was a cause of injury to the third party. 123 Wis. 2d 259, 366 N.W.2d 857 (1985).

¶ 33. It was against this backdrop that the legislature created Wis. Stat. § 125.035 in 1985. The legislative history reveals that the statute was passed in direct response to the court's decisions in *Sorensen* and *Koback*.[15] Although the specific holdings of those two cases only directly extended liability where alcohol

---

*Farmer's Mut. Auto. Cas. Co. v. Gast,* 17 Wis. 2d 344, 117 N.W.2d 347 (1962).

[14] In reaching this conclusion, the court incorporated the rationale of the dissenting opinions of Chief Justice Hallows in *Garcia v. Hargrove,* 46 Wis. 2d at 737 (Hallows, C.J., dissenting), and Justice Day in *Olsen v. Copeland,* 90 Wis. 2d at 494 (Day, J., dissenting). *See Sorensen v. Jarvis,* 119 Wis. 2d 627, 646, 350 N.W.2d 108 (1984).

[15] The Analysis by the Legislative Reference Bureau included as part of 1985 Wis. Act 47 made reference to "2 recent

was provided to a minor by a vendor or social host, the legislature solidified provider immunity as the general rule in Wisconsin with the creation of § 125.035(2).

¶ 34. Through the § 125.035(4)(b) exception the legislature signaled its approval of the specific holdings of *Sorensen* and *Koback*. Using the language of *Sorensen* and *Koback*, the legislature allowed for provider liability in substantially the same circumstances as provided by those cases. With the exception of the use of "provider" as the definitional framework of the statute, the legislature adopted the position of *Sorensen* and *Koback* in passing § 125.035(4)(b).[16] Because the legislature drafted § 125.035 with *Sorensen* and *Koback* in mind and because the statute tracks the language of the case law, we conclude that the statute is not one in derogation of the common law, but indeed is one that attempted to codify the common law as it existed in 1985.

¶ 35. Meier's argument in favor of strict construction also presumes that the defendants would not have been liable prior to the passage of § 125.035. This presumes too much. While *Sorensen* and *Koback* require injuries to a third party, no pre-statutory

cases" of this court extending liability to vendors and social hosts who provide alcohol to underage persons.

[16] We recognize that our rejection of the notion that § 125.035(4)(b) is a statute in derogation of the common law runs contrary to the conflicting court of appeals discussions in *Miller v. Thomack*, 204 Wis. 2d 242, 263, 555 N.W.2d 130 (Ct. App. 1996), and *Kwiatkowski v. Capitol Indem. Corp.*, 157 Wis. 2d 768, 776–77, 461 N.W.2d 150 (Ct. App. 1990). To the extent that the court of appeals discussions of this canon of strict construction in *Miller* and *Kwiatkowski* are inconsistent with this opinion, such discussions are no longer valid precedent.

immunity case law addresses the question posed here.[17] Because the statute is not one in derogation of common law that requires strict construction, we need not hypothesize about the outcome of this case under pre-§ 125.035 common law. The statute and its underlying policy control the outcome of this case, and under the statute Meier may not claim the status of third party in order to proceed with his claims against the defendants.

¶ 36. Meier argues that such a reading of "third party" is inconsistent with the court of appeals decisions interpreting § 125.035(4)(b) in *Miller v. Thomack*, 204 Wis. 2d 242, 555 N.W.2d 130 (Ct. App. 1996), and *Kwiatkowski*, 157 Wis. 2d 768. In *Miller*, the court of appeals concluded that an underage drinker who had illegally consumed alcohol was a third party and thus able to take advantage of the exception to immunity provided under § 125.035(4)(b). 204 Wis. 2d at 262. The court of appeals decision in *Miller* does not conflict with today's decision, which rests upon Meier's conduct in procuring alcohol for Augustine. There the third party

---

[17] While we cannot place much reliance on the pre-statutory case law in defining the scope of "third party" in this context, we note that there is nothing in *Sorensen* or *Koback* to suggest that the injured third party was engaged in the procurement of alcohol.

We also note that the parties engage in debate over the meaning of cases that arose during the fourteen months between the date of the *Sorensen* decision and the operative date of § 125.035(2), including *Dziewa v. Vossler*, 149 Wis. 2d 74, 438 N.W.2d 565 (1989). Because we are concerned with the legislative intent behind § 125.035(2), we find that cases based upon pre-statutory law but decided after that statute was passed do not bear on the statute's interpretation and are of no assistance in our determination of legislative intent.

was a fellow drinker, but was not deemed a provider under § 125.035(4)(a).[18]

¶ 37. In *Kwiatkowski*, the court of appeals correctly concluded that the § 125.035(4)(b) exception applies only when the injured third party is the claimant. 157 Wis. 2d at 776. The court did so in response to a claim against a vendor of alcohol brought by an underage drinker (Kwiatkowski) who injured a passenger in his automobile (Pederson). In concluding that Kwiatkowski could not maintain an action under § 125.035(4)(b), the court of appeals referred to Pederson as an injured third party, despite the fact that Pederson procured the alcohol beverages for Kwiatkowski. *Id.* at 771, 774. The court of appeals' statement that Pederson was a third party under § 125.035(4)(b) is incorrect and should not be relied on as valid precedent. However, we note that the determination of whether Pederson was a third party was not an issue in the case and as such was not necessary in deciding the issue of whether Kwiatkowski could take advantage of the § 125.035(4)(b) exception.

¶ 38. Having concluded our statutory construction of § 125.035(4)(b), we turn to a final issue that Meier raises with respect to the resolution of the summary judgment motion. Meier argues that regardless of whether he is a third party with respect to those

[18] While the court of appeals did not address the drinker's involvement in procuring alcohol, we did so in our review. *Miller v. Thomack*, 210 Wis. 2d 650, 657, 563 N.W.2d 891 (1997). However, we did not address the question of whether the underage drinker in question would qualify as a third party, but rather specifically left the question open. *Id.* at 660–61 n.11. Thus the court of appeals decision in *Miller* should not be read in conjunction with this court's decision in *Miller* to reach the opposite conclusion as reached in today's decision.

purchases of alcohol in which he was a provider, he is an injured third party and the defendants are not immune for those purchases in which he was not a provider.

¶ 39. While there may have been individual transactions that occurred between the group and the defendants in which Meier did not purchase or physically obtain the alcohol, we will not subdivide and nuance an evening of drinking into a dozen or so individual transactions in a case such as this. Meier, Augustine, and Johnson collectively procured all of the alcohol and drank it as a group. Meier himself paid for one-third to one-half of the alcohol that evening and may have physically procured alcohol that he did not personally purchase. Where a provider such as Meier has provided alcohol to an underage drinker that was a substantial factor in causing his own injuries, we will not dissect the underage drinker's binge to determine whether one such provider may proceed against other providers. Meier never disassociated himself from the procurement of alcohol that evening. Having been involved in the collaborative procurement of alcohol from beginning to end, Meier's status did not alternate from third party to provider with each individual purchase.

¶ 40. We conclude by noting that we do not fail to grasp the severity of harm caused to Jason Meier. We realize that the consequences of our decision may seem harsh. The statute requires the outcome, and it is beyond our powers to redraft it. We note that Meier is not without recourse. Meier still may proceed in his cause of action in negligence against Augustine and his insurer. However, because Meier provided alcohol to an underage drinker and the provision of that alcohol was

a substantial factor in causing the accident resulting in Meier's injuries, he cannot proceed against the defendants under the exception to immunity provided by § 125.035(4)(b).

## II

¶ 41. Finally, we address Meier's contention that the circuit court erroneously exercised its discretion in granting Semovski's motion to enlarge time and denying Meier's motion to strike Semovski's answer and motion for default judgment. Where a dilatory party moves for an extension of time following the statutory deadline for filing an answer an extension of time must be based on a finding of excusable neglect. Wis. Stat. § 801.15(2)(a); *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982). In addition to finding excusable neglect, the circuit court must consider whether the interests of justice will be served by granting or denying a motion to enlarge the time to file an answer. *Id.* at 469.

¶ 42. The power to grant an extension of time is highly discretionary, and this court will not disturb the circuit court's decision unless it constitutes an erroneous exercise of discretion. *Id.* at 467. We will not find an erroneous exercise of discretion if the circuit court considered the relevant facts, properly interpreted and applied the law, and reached a reasonable determination. *Ness v. Digital Dial Communications, Inc.*, 227 Wis. 2d 592, 600, 596 N.W.2d 365 (1999).

¶ 43. In the case at hand, Semovski's dilatory answer resulted from his failure to provide his counsel with the summons served on him personally and his attorney's assumption that Semovski and Champ's

628

were served simultaneously. The circuit court identified the controlling standard as excusable neglect, and after stating the simultaneous service "probably happens in. . .the significant majority of cases" the circuit court concluded that Semovski's counsel's assumption was within the realm of "reasonable practice." After considering the "rather severe consequences" of granting default judgment and the "absence of any prejudice to the plaintiff" the court granted Semovski's motion to enlarge time and denied Meier's motion to strike and motion for default judgment. Meier argues that neither Semovski's failure to provide counsel with both summonses nor his counsel's failure to inquire as to when he was personally served can constitute excusable neglect.

¶ 44. We will not second-guess the circuit court's discretionary determination that Semovski's neglect was excusable. The circuit court applied the proper standard and appropriately considered the harsh consequences of default judgment and the lack of prejudice to the plaintiff. Because the circuit court reached a reasonable determination after application of the correct legal standard and consideration of the relevant factors we cannot conclude it erroneously exercised its discretion.

### III

¶ 45. In sum, we hold that an individual, such as Meier, who provides alcohol to an underage person that is a substantial factor in causing an accident cannot be considered an injured third party under Wis. Stat. § 125.035(4)(b). Therefore he cannot take advantage of the exception to the immunity provided by that provision in an action against another provider.

Accordingly, the circuit court properly granted summary judgment in favor of the defendants. Because we also conclude that the circuit court did not erroneously exercise its discretion in granting Semovski an extension of time to file an answer and denying Meier's motion to strike and motion for default judgment, we affirm the orders and judgment of the circuit court.

*By the Court.*—The orders and judgment of the circuit court are affirmed.